John Campbell, William Ellison, George Steece, and Hiram Campbell, Plaintiffs in error, v. John Doe, ex dem. the Trustees and Treasurer of Original Surveyed Township, No. 1, in Range No. 19, &c.

On the 20th of May, 1826, Congress passed an act (4 Stat. at Large. 179,) giving school lands to such townships, in the various land districts of the United States, as had not been before provided for, which were to be selected for such townships by the Secretary of the Treasury, out of any unappropriated public lands within the land district where the township was situated for which the selection was made.

The Secretary of the Treasury, through the Land-Office, directed the Registers to make selections and return lists thereof, to be submitted to him for his approbation.

Under this direction, the land in question was selected and reserved from sale.

Afterwards, the Register withdrew the selection, by authority of the Commissioner of the Land-Office, and permitted a person to enter and take it up, this person knowing the circumstances under which it had been reserved from sale.

Finally, the Secretary of the Treasury selected the land in question, under the authority given to him by the act of 1826.

This selection was good, and conferred a title, overruling the intermediate entry.

This case was brought up from the Supreme Court of the

State of Ohio, by a writ of error, issued under the 25th section of the Judiciary Act.

The facts are all stated in the opinion of the court.

It was argued by *Mr. Marsh*, for the plaintiffs in error, and *Mr. Vinton*, for the defendant in error.

*Mr. Marsh*, for the plaintiffs in error, contended that the entry of Hamilton was legal; that the reservation from sale had been withdrawn, and consequently the land was open; that, if the Secretary of the Treasury must be supposed to have sanctioned the first order, reserving the land for sale, so he must be supposed equally to have sanctioned the second order, authorizing the withdrawal of the reservation; that, if Hamilton's entry was legal, the subsequent selection of the same land by the Secretary was void, because the act of Congress only authorized him to. select unappropriated land, and this was not so; that there was no fraud, or any mistake, on the part of the Register or of Hamilton.

*Mr. Vinton*, for the defendant in error, contended, —

1st. That the selection of the land in controversy, as school land, by the Secretary of the Treasury, on the 9th of January, 1834, vested the legal title thereof in the State of Ohio. See act of the 20th of May, 1826, 4 Stat. at Large, 179, and act of the 3d of March, 1803, 2 Stat. at Large, 225.

2d. The prior sale to Hamilton and certificate of purchase cannot avail him, for several reasons: .

1. Because the title thus vested in the State overreaches his certificate, and reaches back to the date of the original selection of the land for schools, and the report of it, as such, to the Commissioner of the General Land-Office. Lessee of Hammond, *v.* Warfield, 2 Harr. & Johns. Rep. 158; 17 Ohio Rep. 287, 288.

It will be insisted that this consequence results from the fact, that the duty of making the selections conferred on the Secretary, as incident to its proper discharge, a discretion, to be exercised by him in a manner most beneficial to the objects of the grant, consistent with a due regard to the interests of the United States; and that, to exercise this discretion wisely and intelligibly, he must have at his command the means of ascertaining every fact necessary to a proper selection; such, for example, as the ascertainment of the quality of the land, which could only be done through subordinate agencies. And that, therefore, the selection of the land, under the circular of the 24th of May, 1826, and the report of it, by the Register, to the General Land-

Office, by direction of the Secretary, for his decision thereon, being necessary and proper preliminary steps towards carrying the act into execution, had the effect in law to sever the land, thus selected and reported, from the mass of the public lands, until his decision was had; and, when approved by him, the whole proceeding was in law one act, and constituted the selection by the Secretary required by the act of the 20th of May, 1826.

That the land was, from the commencement of the act of selection, severed from the mass of public lands. See Wilcox *v.* Jackson, 13 Pet. 513.

2. Because, whether the title of the State overreaches the sale to Hamilton or not, his purchase was void, for the reason that the land was at the time withheld from sale, and could not be entered by him.

In support of this position, it will be insisted that the selection and report of the land to the General Land-Office, being made by the direction of the Secretary, for his decision thereon, the question of its approval was in law pending before him, and under his consideration until his decision should be made; which pending consideration necessarily, for the time being, suspended the sale of the lands selected; and, whether this be so or not, the sale was expressly prohibited by the circular of the 30th of August, 1832, until the Register should be officiallly advised of the approval or rejection of the selection by the Secretary.

It will be claimed, also, that the power of reservation from sale, in such case, is incident to the proper execution of the act of May 20, 1826, making the grant of these school lands, and is also incident to the general supervisory power of the Secretary over the public lands given by the act of the 25th of April, 1812, entitled "An act for the establishment of a General Land-Office in the Department of the Treasury," which act was at that time in force. 2 Stat. at Large, 716.

It will also be further insisted that, though the selection of these school lands was specially intrusted to the Secretary of the Treasury, by the law granting them, and required his express approval, yet the circulars of the 24th of May, 1826, and the 30th of August, 1832, issued by the Commissioner of the General Land-Office, prescribing the mode of selection and withdrawing the selected lands from sale, will, in the absence of proof to the contrary, be presumed to have been issued under the direction and sanction of the Secretary. Wilcox *v.* Jackson's Lessee, 13 Pet. 512.

This, however, is not a conclusive presumption of law, but belongs to that class of presumptions which may be rebut-

ted by proof. 1 Greenleaf's Evidence, sects. 33 and 34, page 42.

And where the facts of a case are agreed, this court will apply and has applied to those facts the presumptions of law belonging to this class. Doddridge v. Thompson, 9 Wheat. 483; Wilcox v. Jackson, 13 Pet. 512, 513.

3d. The sale to Hamilton was void because the letter of the Commissioner of the General Land-Office of the date of the 19th of March, 1833, giving to the register permission to withdraw the selection and make another in its stead, was written without authority from the Secretary of the Treasury. That it was so, is shown by the facts that the said Commissioner subsequently recommended the approval of said selection to the Secretary, who, on appeal to him, confirmed it with a full knowledge of the sale to Hamilton, of said letter of the 19th of March, 1833, and of all the correspondence relating to the said tract of land existing at that date; which facts rebut the presumption that might otherwise arise that said letter was written by authority. 1 Greenleaf's Ev. sects. 33 and 34.

4th. Because, without the express permission of the Secretary, the Commissioner had no more authority to reject a selection duly made and reported, than he had to confirm it. 17 Ohio, Rep. 288.

5th. Because, if said letter of the 19th of March, 1833, were written by authority of the Secretary, the Register did not comply with its directions, inasmuch as he withdrew the selection theretofore made, and made no other in its stead, and thus, as far as in him lay, defeated the grant altogether.

Mr. Justice McLEAN delivered the opinion of the court.

This action of ejectment is here on a writ of error to the Supreme Court of Ohio, under the 25th section of the Judiciary Act. The plaintiffs in error claim title to a quarter section of land under an entry made with the Register of the Land-Office; the defendants claim the same as reserved for school purposes. As both parties claim under an act of Congress, either, is entitled to a writ of error to have the judgment against the right asserted, revised in this court.

By the act of the 20th of May, 1826, Congress gave school lands to such townships and fractional townships in the land districts of the United States as had not been provided for, to be selected within such townships by the Secretary of the Treasury, out of any unappropriated public lands within the land district in which the township was situated. Under that act, fractional township No. 1, range No. 19, of the Chillicothe land district of Ohio, was entitled to 160 acres of land.

On the 24th of the same month the Treasury Department issued a circular, through the General Land-Office, to the Registers of the different land districts, directing them to make selections of the lands granted and return a list to the General Land-Office. for the approbation of the Secretary of the Treasury.

The Register of the Chillicothe land district caused to be selected the south-east quarter of section No. 15, township 2, range 18, the land now in controversy. A return of this selection was made to the General Land-Office the 23d October, 1828. This return contained other tracts not made as required by the law, and consequently the list was returned to the Register for correction. The errors being corrected the list was again returned to the General Land-Office. But afterwards, in 1832, a circular from the Land-Office was directed to the Register, accompanied by a printed form and directions so that the returns of lands selected should be uniform. The tracts selected were required to be noted and reserved from sale. Where good land could not be procured in the township, the selection was authorized to be made in the nearest adjacent township which contained good land. The land above selected is not in township No. 1, range No. 19, nor in the next adjacent township; but in the nearest adjacent township in which good land could be procured.

In pursuance of the above instruction, the Register withheld the land from sale. On the 7th March, 1833, he informed the Commissioner that "some of the selections which he had reported were half quarter sections, and that others did not lie "either in the township or in the nearest adjacent township, where good land exists," "which are not in accordance with the general rules laid down in the Commissioner's last circular;" and he says, "I have withheld from sale all the lands selected which were embraced in my two reports," and he inquires whether the fact of his having reported them takes them out of the general rule prescribed for his government; and whether he should consider all the selections heretofore made, and have them made in exact conformity to the instructions."

In answer to the above the Commissioner says, "on the subject of the school lands, selected by you in 1831, I have to state that, as there has been no action of the department on these selections, you are at liberty to withdraw them and select other lands in their stead, in conformity to my circular of the 30th August, 1832."

Under this letter, it seems, the Register permitted Hamilton to enter the land in controversy; but no other school land was selected in lieu of it. On this entry being made the school trus-

tees of the township appealed to the Secretary of the Treasury, against the sale of the land, and claimed the original selection. And the same being laid before the Secretary, he sanctioned and confirmed the original selection. This was done the 9th January, 1834.

The decision of this case must depend upon the validity of Hamilton's entry. He had full notice that the quarter section had been selected for school purposes, and was reserved from sale. This information was given him by the Register on his first application to enter it. He then endeavored to purchase it from the trustees. The selection of that tract was made, at first, as the law required, though other tracts on the same list had not been so selected.

The entry by Hamilton may have been permitted by the Register, through inadvertence or mistake. This supposition is at least as probable, and indeed more so, than that he withdrew the selection and failed in his duty to select another tract in place of it. But, in whatever light this may be viewed, we are clear, that the Secretary of the Treasury had the power, under the act of Congress, to make the selection; and his decision, declaring the entry of Hamilton invalid, was, under the circumstances, conclusive. This tract, selected by the Secretary under the act of 1826, "is held by the same tenure, as provided in the second section of that act, and upon the same terms for the support of schools, in such township, as section number sixteen is held." By the act of the 3d March, 1803, it is declared that lands appropriated for schools, shall be vested in the legislature of the State in trust &c.; and in the same act section number sixteen, in each township, was designated for school purposes. If, therefore the quarter section in dispute was legally selected for school purposes, the legal title became vested in the Legislature of Ohio.

The general duties of the Commissioner of the General Land-Office are required to be performed "under the direction of the head of the Treasury Department." And where a duty is especially enjoined on the Secretary of the Treasury, although he may perform it through the Commissioner of the General Land-Office, who may well be presumed to act under his authority where the contrary does not appear; yet where the Secretary has interposed and decided the matter, as in the case under consideration, his decision must be considered as the only one under the law. So far then, as the sanction of the Secretary was given to the appropriation of the land in dispute, to school purposes, it must be considered as a valid appropriation.

This view imposes no hardship on Hamilton, as he had notice of the tract selected, and his repeated attempts to purchase the

same land cannot be favorably considered by the court. Under the circumstances, no right became vested in him, by reason of his entry of the land, which could be regarded or enforced by a court of equity. The judgment of the State court is, therefore, affirmed.

## Order.

This cause came on to be heard on the transcript of the record, from the Supreme Court of the State of Ohio, and was argued by counsel. On consideration whereof, it is now here ordered, and adjudged, by this court, that the judgment of the said Supreme Court in this cause, be, and the same is hereby, affirmed, with costs.