## RICCOMINI v. UNITED STATES.
### No. 7252.

Circuit Court of Appeals, Ninth Circuit.
Feb. 20, 1934.

Marshall B. Woodworth, of San Francisco, Cal., for appellant.

H. H. McPike, U. S. Atty., and Robert L. McWilliams and S. P. Murman, Asst. U. S. Attys., all of San Francisco, Cal., for the United States.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from an order of the District Court sustaining defendant's demurrer to plaintiff's complaint, upon the sole ground that the causes of action therein stated were not within the jurisdiction of that court.

The complaint in the first cause of action sets forth that the United States is indebted to plaintiff in the sum of $2,167.50, alleged to have been illegally exacted on the 7th day of August, 1926, as customs duties, for the importation of merchandise some six years prior to filing the complaint. The exactions were pursuant to paragraph 802 of schedule 8, § 1, of the Tariff Act of 1922 (19 USCA § 121, Schedule 8, par. 802). The second cause of action, in language similar to the first, asks for $4,220 alleged to have been illegally exacted on the 19th day of April, 1929, as customs duties, for the importation of merchandise some three and one-half years prior to filing the complaint. Plaintiff further alleges that said section of said Tariff Act is unconstitutional.

The material part of said section reads as follows:

"Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, arrack, absinthe, kirschwasser, ratafia, and bitters of all kinds (except Angostura bitters) containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for, $5 per proof gallon; Angostura bitters, $2.60 per proof gallon."

The complaint alleged that plaintiff is and has been at all times mentioned in the complaint in the business of importing goods, wares, and merchandise from foreign countries into the United States, among these importants being "bitters of all kinds (except Angostura bitters) containing spirits, and compounds and preparations of which distilled spirits are the component material of chief value and not specially provided for," in the said Tariff Act, and especially bitters known as and called Amargo bitters; that plaintiff imported into the port of San Francisco from Hamburg, Germany, several hundred cases of said Amargo bitters; that under the said Tariff Act, as being enforced by the collector of customs at the port of San Francisco, plaintiff was compelled to pay an exaction of $5 per proof gallon, which in the aggregate amounted to sum sought to be recovered by this action.

The complaint then sets forth at length a state of facts which it is alleged makes these exactions illegal, and, in addition pleads that the provision under which the collector required the tax to be paid was unconstitutional and void.

To the complaint defendant interposed a general demurrer on two grounds. First, that the complaint wholly fails to state a cause of action. Second, that the court does not have jurisdiction. The court sustained the demurrer on the second ground alone.

The sole question presented is whether the United States District Court has jurisdiction of an action against the United States for the recovery of customs duties, alleged to have been illegally exacted as above stated under said Tariff Act.

Appellant contends that by subdivision 5, § 41, tit. 28 USCA, he is entitled to sue the government to recapture customs duties in the United States District Court.

The said subdivision provides:

"The district courts shall have original jurisdiction * * * of all cases arising under any law providing for internal revenue, or from revenue from imports or tonnage, except those cases arising under any law providing revenue from imports, jurisdiction of which has been conferred upon the Court of Customs Appeals."

Appellant also insists that subdivision 20 of section 41, title 28 USCA, gives the United States District Courts original jurisdiction in such controversies.

That section provides:

"The district courts shall have original jurisdiction * * * concurrent with the Court of Claims, of all claims not exceeding $10,000 founded upon the Constitution of the United States or any law of Congress, or upon any regulation of an executive department, or upon any contract, express or implied, with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable, and of all set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court. * * * "

Appellant takes the position that the present suit can be maintained in the District Court under both or either of the above statutes. On the other hand the appellee contends that jurisdiction of controversies such as alleged in the complaint, involving the customs revenue laws, has been conferred upon the Court of Customs Appeals to the exclusion of the District Court.

While the complaint sets forth that the liqueurs for which the duties were exacted were imported from Germany into San Francisco, appellant makes the contention that if the particular section of the Tariff Act under which the collector of customs exacted the duties is unconstitutional, that it follows by implication of law that the liqueurs admittedly imported "were not imported merchandise," by which is meant "merchandise not subject to any tariff at all," in other words, all proceedings thereunder were entirely outside the customs law machinery, and jurisdiction of the collector of customs, that no protest would be required to be filed, and the whole matter would be without the jurisdiction of the Court of Customs Appeals.

By the allegations of the complaint and arguments based thereon to the effect that these goods, admittedly imported from Germany, were, in a legal sense, "not imported at all," it is sought to bring this case within the rule announced in Ex parte Fassett, 142 U. S. 479, 12 S. Ct. 295, 35 L. Ed. 1087, and similar cases cited by appellant. It is notable that the method and procedure adopted in that case was entirely different. There the collector of customs at the port of New York forcibly took possession of a yacht, and deprived the owner of the use and control of her and detained her for the enforcement of the payment of duties alleged to be due, upon the claim that she was an article imported into the United States within the meaning of the customs revenue laws, and, as such, subject to payment of duty. The owner did not pay the duty but filed a libel in the District Court of the United States for the Southern District of New York against the yacht and Fassett for the delivery of the yacht to him. Thereupon the collector applied to the Supreme Court of the United States for a writ of prohibition to the District Court, alleging want of jurisdiction in the District Court to entertain the suit. The Supreme Court, without considering the question of the libel of the vessel for duty, denied the writ, among other reasons being, that the District Court having jurisdiction of the vessel and the collector, the Supreme Court would not prohibit it from proceeding in the exercise of such jurisdiction. If the appellant had placed himself in a similar position by refusing to pay duties, and the collector thereupon had seized the goods, and then an action had been instituted to recover the same, appellant's position would be in line with the case cited, but here by payment of the duties exacted, he to that extent concedes the authority of the collector, but thereafter failed to follow the method for relief provided by the law in the tribunals established for that purpose.

In determining the question before us it is necessary to consider the various statutes which have a bearing upon the issue.

Section 514 of the Tariff Act of 1922, 42 Stat. 969, which is section 398 of title 19 USCA, provides as follows:

"All decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs revenue laws, and his liquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry, shall be final and conclusive upon all persons, unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liqui-

dation or decision, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, or decision, the reasons for the objection thereto, and if the merchandise is entered for consumption shall pay the full amount of duties, charges, and exactions ascertained to be due thereon. Under such rules as the Board of General Appraisers may prescribe, and in its discretion, a protest may be amended at any time prior to the first docket call thereof."

Section 515 of the Tariff Act of 1922, 42 Stat. 970, section 399, title 19 USCA, provides, among other things:

"Upon the filing of such protest and payment of duties and other charges the collector shall within sixty days thereafter review his decision. * * * If the collector shall, upon such review, affirm his original decision, * * * the collector shall forthwith transmit the entry and the accompanying papers, and all the exhibits connected therewith, to the Board of General Appraisers for due assignment and determination as provided by law. Such determination shall be final and conclusive upon all persons * * * except in cases in which an appeal shall be filed in the United States Court of Customs Appeals. * * *"

Appellant insists that these statutes do not confer authority or jurisdiction upon the agencies and courts created thereby to determine the constitutionality of a statute covering a tariff schedule.

Appellant strongly relies upon the decisions of the Supreme Court of the United States in "the Insular Cases," De Lima v. Bidwell, 182 U. S. 1, 21 S. Ct. 743, 45 L. Ed. 1041; Goetze v. U. S., 182 U. S. 221, 21 S. Ct. 742, 45 L. Ed. 1065, and others which rested largely upon the determination that under the Tariff Act of 1909 (36 Stat. 11) the Board of General Appraisers had no jurisdiction of cases where the collector assessed duties upon goods not imported. The Tariff Act of 1922 is broader and embraces "all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury)," which would embrace the exactions complained of by appellant in this case. Thus jurisdiction is extended to all decisions of the collector, including exactions of whatever character as to the rate and amount of

duties chargeable under any provision of the customs revenue laws. Further, every such decision, order, and finding of a collector may be protested and reviewed.

Jurisdiction for the determination of these questions has been conferred by Congress through proper channels upon the United States Courts of Customs Appeals.

■ Prior to the enactment by Congress of the Customs Administration Act of 1890 (26 Stat. 131), actions against the collector of customs were properly brought in the District Courts. This act was designed to relieve the District Court from passing on this class of controversies. Congress later by the Tariff Act of 1909 (36 Stat. 105) took from the Circuit Court of Appeals jurisdiction to review decisions of the Board of General Appraisers, and established the Court of Customs Appeals to exercise the functions theretofore vested in the Circuit Courts. Subsequent acts of Congress have withdrawn from the jurisdiction of the District Courts and the Circuit Court of Appeals claims brought against the government to recover duties exacted in the collection of the customs revenues. "Congress has plenary power to prescribe specifically the methods by which the rights of importers against the Government may be enforced." 17 C. J. 642. That Congress meant to establish a complete and exclusive system for the handling of customs cases is clearly indicated by section 308, tit. 28 USCA (Judicial Code, § 195, amended).

The intention of Congress to confer jurisdiction to determine the very question here involved is indicated by the language of the statute, whereby "in any case in which there is drawn in question the construction of the Constitution, * * * or any part thereof," the same may be certified to the Supreme Court for its review and determination, with the same power and authority in the case as if it had been carried there by appeal or writ of error. This provision presupposes that a constitutional question may be involved in these proceedings.

■■ The decisions of the Supreme Court having determined that the Court of Customs Appeals is a legislative court and not a constitutional court, appellant insists that such court is not competent to determine the constitutionality of a statute, and that therefore appellant must repair to the United States District Court for relief. There is no merit to this contention.

Congress, whenever it thinks proper, undoubtedly may, without infringing the Con-

stitution, confer upon an executive officer or administrative board, or an existing or specially constituted court, or retain for itself, the power to hear and determine controversies respecting claims against the United States, it follows indubitably that such power, in whatever guise or by whatever agency exercised, is no part of the judicial power vested in the constitutional courts by the Constitution. Williams v. U. S., 289 U. S. 553, 53 S. Ct. 751, 77 L. Ed. 1372. It is not important whether such a proceeding originated as an administrative or executive determination, if when it comes to court, whether legislative or constitutional, it calls for the exercise of only the judicial power of the court upon which jurisdiction has been conferred by law. Old Colony Trust Co. v. Com'r of Internal Revenue, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918; Van Mourick v. Bowie et al. (App. D. C.) 69 F.(2d) 834.

This system of corrective justice being complete in itself, it must be concluded that Congress did not intend to allow any other method to redress supposed wrongs occurring in the operation of the laws in relation to the collection of revenues. Gulbenkian v. U. S. (C. C. A.) 186 F. 133; Nichols v. U. S., 7 Wall. (74 U. S.) 122, 19 L. Ed. 125.

Under this procedure, the appellant is precluded from suing in the District Court because jurisdiction of such causes has been expressly taken from the District Courts and conferred on the Customs Courts (sections 398, 399, Title 19 USCA; section 308, Title 28 USCA).

Affirmed.